IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JTH TAX, INC.
d/b/a LIBERTY TAX SERVICE,

      Plaintiff,

      v.                                                                        Civil Action No. 2:08cv80

LIBERTY SERVICES TITLE, INC.
d/b/a LIBERTY SERVICES,

      Defendant.

## ORDER

This matter comes before the Court upon the motion of Liberty Services Title, Inc., d/b/a Liberty Services ("Defendant" or "Liberty Services") to dismiss or, in the alternative, to transfer. For the reasons set forth herein, the Court hereby **GRANTS** Liberty Services' motion to transfer and hereby **TRANSFERS** jurisdiction to the United States District Court for the Southern District of Florida.

I.     FACTUAL AND PROCEDURAL BACKGROUND

JTH Tax, Inc., d/b/a Liberty Tax Service ("Plaintiff" or "Liberty Tax") is a Delaware corporation with its headquarters and principal place of business in Virginia Beach, Virginia. Liberty Services is a Florida Corporation with its headquarters and principal place of business in Lake Worth, Florida. Liberty Tax alleges the following relevant facts in its Complaint:

1. "In or about December 2006, Liberty Tax learned that Liberty Services was displaying advertisements which unlawfully used Liberty Tax's federally registered trademarks." (Pl.'s Comp. ¶ 6.)

2. "On December 19, 2006, Liberty Tax sent a letter to defendant enclosing its trademark registrations and requested that defendant cease and desist its infringement on Liberty Tax's trademarks. In response to Liberty Tax's letter, defendant temporarily ceased use of Liberty Tax's marks." (Pl.'s Comp. ¶ 7.)

3. "On or about January 30, 2008, Liberty Tax learned that Liberty Services had resumed operation of its tax preparation business in Florida using signage, advertising and a website displaying Liberty Tax's marks and/or marks confusingly similar to Liberty Tax's federally registered trademarks." (Pl.'s Comp. ¶ 9.)

4. "Also, plaintiff discovered that defendant is making a material false representation of a loan product on its website claiming to offer tax refunds the same day, with no mention that the product is in truth a bank loan. (Pl.'s Comp. ¶ 9.)

On February 13, 2008, Liberty Tax filed a Complaint seeking an injunction and damages for trademark infringement (Count One) and false advertising (Count Two). On March 10, 2008, Liberty Services filed a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). In the alternative, Liberty Services moves to transfer venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a) or § 1406(a). On March 24, 2008, Liberty Tax filed a Response. On March 30, 2008, Liberty Services filed a Reply. The Motion has been fully briefed and is ripe for review by this Court.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(2) permits a party to move the court to dismiss an action if the court

lacks personal jurisdiction over the party. When a defendant moves to dismiss a Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the burden ultimately rests on the plaintiff "to prove the existence of a ground for jurisdiction by a preponderance of the evidence." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). However, a plaintiff need only make a prima facie showing of jurisdiction when the Court "rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending receipt at trial of evidence related to the jurisdictional issue." In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997). In making its ruling, the Court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676.

Although the general remedy applied by Courts lacking personal jurisdiction over a party is dismissal of the case, 28 U.S.C. § 1406(a) has been interpreted to permit transfer of the case as an alternative remedy. The statute states, in relevant part:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). "[S]ection 1406(a) has been interpreted to authorize transfers in cases where venue is proper but personal jurisdiction is lacking or some other impediment exists that would prevent the action from going forward in that district." In re Carefirst of Maryland, Inc., 305 F.3d 253, 255-56 (4th Cir. 2002); see also Saudi v. Northrup Grumman Corp., 427 F.3d 271, 277 (4th Cir. 2005); Porter v. Groat, 840 F.2d 255, 257 (4th Cir. 1988).

**III.     ANALYSIS**

In its Motion, Liberty Services claims that this Court lacks personal jurisdiction and that venue is improper because the company has no contacts whatsoever with Virginia. Specifically, Liberty Services argues that the company: (1) does not conduct business or advertise its business in Virginia; (2) is not registered to conduct business in Virginia; (3) has no agents employees in Virginia; (4) does not have property, bank accounts, offices, or mailing addresses in Virginia; and (5) has paid no taxes in Virginia. In its Response, Liberty Tax claims that this Court has specific personal jurisdiction and that venue is proper because Liberty Services intentionally directed a tort at Liberty Tax in Virginia and because that tort had effects on Liberty Tax in Virginia. In its Reply, Liberty Services argues that it did not intentionally direct a tort at Liberty Tax in Virginia and that the effects of any tort were felt by Liberty Tax in Florida and not in Virginia.

In Virginia, a court has personal jurisdiction over a defendant if: (1) jurisdiction is authorized by Virginia's Long-Arm Statute, Va. Code § 8.01-328.1, and (2) jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. <u>Hartford Cas. Ins. Co. v. JR Marketing, LLC</u>, 511 F. Supp. 2d 644, 647 (E.D. Va. 2007). As a threshold matter, Virginia's Long-Arm Statute does not confer personal jurisdiction over Liberty Services. The relevant portion of the statute authorizes courts to exercise personal jurisdiction over a defendant when the cause of action arises from the defendant:

> (1) Transacting any business in this Commonwealth;
> (2) Contracting to supply services or things in this Commonwealth;
> (3) Causing tortious injury by an act or omission in this Commonwealth;
> (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any

>other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.

Va. Code § 8.01-328.1(A)(1)-(4). Although Liberty Services may arguably have caused "tortious injury in this Commonwealth by an act or omission outside this Commonwealth," the company does not have sufficient contacts with Virginia to satisfy the explicit requirements of category four.

Even if the Long-Arm Statute did confer personal jurisdiction over Liberty Services, exercising personal jurisdiction over Liberty Services would violate the Due Process Clause. "[B]ecause Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (internal quotations and citations omitted). To satisfy the Fourteenth Amendment's due process requirements, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotations omitted). The minimum contacts analysis considers whether the "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

Personal jurisdiction may be general or specific under the Due Process Clause. "[W]hen a defendant's contacts with the forum state are continuous and systematic, irrespective of whether the transaction in question had sufficient contacts with the state, a court may exercise *general* personal jurisdiction over the defendant. In the absence of continuous and systematic

5

contacts, a court may still exercise *specific* personal jurisdiction when the contacts relate to the cause of action and create a substantial connection with the forum state." Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 450 (4th Cir. 2000) (internal citations omitted). Courts must apply a three-pronged test to determine whether specific personal jurisdiction satisfies the Due Process Clause asking: "(1) whether the defendant purposefully availed itself of the privileges of conducting activities in the forum state, (2) whether the plaintiff's claim arises out of the defendant's forum-related activities, and (3) whether the exercise of personal jurisdiction over the defendant would be constitutionally reasonable." Young v. New Haven Advocate, 315 F.3d 256, 261 (4th Cir. 2002) (internal quotations and citations omitted).

The central issue in the dispute between Liberty Tax and Liberty Services is whether Liberty Services "purposefully availed itself of the privileges of conducting activities" in Virginia. Id. Because this first prong of the specific personal jurisdiction test is dispositive as to whether this Court has personal jurisdiction over Liberty Services, it is unnecessary for the Court to analyze the second and third prongs. In its Response, Liberty Tax argues that the letter it sent to Liberty Services regarding Liberty Service's alleged infringement put Liberty Services on notice that it was intentionally directing a tort at a resident of Virginia and that the tort was having effects in Virginia. Liberty Tax claims that Liberty Services "purposefully availed itself of the privileges of conducting activities" in Virginia when it allegedly continued to infringe on Liberty Tax's trademarks after receiving this notice. In support for this position, Liberty Tax relies on a United States Supreme Court case, Calder v. Jones, 465 U.S. 783 (1984), and an unpublished Ninth Circuit case, MCA Records, Inc. v. Charly Records, Ltd., 1997 WL 76173

(9th Cir. 1997) (unpublished).

In Calder, the Court upheld a California court's exercise of personal jurisdiction over two Florida residents who wrote and edited an allegedly libelous article in Florida about a California entertainer where the article was printed and distributed in California by the employer of the writer and editor. The Court reasoned that jurisdiction was proper because the effects of the tort were felt primarily in California and because the tort was intentionally directed at a resident of California. Calder, 465 U.S. at 789-90. Similarly, in MCA Records, the Court upheld a California court's exercise of personal jurisdiction over two foreign corporations that licensed the right to manufacture and distribute records to their foreign subsidiary where the subsidiary distributed and advertised the records in California and the records infringed on a California corporation's trademarks. The Court reasoned that jurisdiction was proper because the effects of the tort were felt primarily in California and because the tort was intentionally directed at a resident of California. MCA Records, 1997 WL 76173.

Even if the Ninth Circuit's broad interpretation of Calder's "effects test" was binding on this Court, the effects of Liberty Services' alleged tort were felt in Florida and the alleged tort was directed at residents of Florida. First, Liberty Tax suffered the "effects" of the alleged tort in Florida where its franchisees allegedly lost business to Liberty Services due to Liberty Services' infringement. Second, Liberty Services "directed" the alleged tort at Liberty Tax franchisees located in Florida and has not attempted to compete with Liberty Tax franchisees in any other state. The fact that Liberty Tax happens to be based in Virginia, suffered lost franchise royalties due to Liberty Services' infringement, and notified Liberty Services of these facts, is insufficient to establish that Liberty Services "purposefully availed itself of the privileges of

conducting activities" in Virginia. In addition, both Calder and MCA Records are easily distinguishable from the instant case in that, in both cases, either the defendant's employer or the defendant's subsidiary committed actual tortious conduct in the forum. In this case, both parties acknowledge that the tortious conduct was committed entirely in Florida.

Unlike the Ninth Circuit, the Fourth Circuit has taken a restrictive interpretation of Calder and its progeny. For example, in ESAB Group, Inc. v. Centricut, 126 F.3d 617 (4th Cir. 1997), the Court overturned a South Carolina court's exercise of personal jurisdiction over two New Hampshire defendants who allegedly obtained the South Carolina plaintiff's trade secrets and customer lists from a Florida resident. Significantly, the defendants' only contact with South Carolina was that they knew that their increased sales nationwide might result in fewer sales nationwide to the plaintiff. Id. at 625. No sales actually occurred in South Carolina. Id. The Court reasoned that this contact was insufficient to establish specific personal jurisdiction:

> The [plaintiff] contends, however, that wherever the sales were made by [the defendants], and thus lost to the [plaintiff], they were ultimately felt in South Carolina at the [plaintiff's] headquarters. While this is undoubtedly true, when unaccompanied by other contacts, it is ultimately too unfocussed to justify personal jurisdiction. Instead of grounding jurisdiction on a defendant's decision to purposely avail itself of the privilege of conducting activities within the forum state, or on a defendant's activities expressly aimed at the forum state, jurisdiction would depend on a *plaintiff's* decision about where to establish residence. Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there.

Id. at 625-26 (internal quotations and citations omitted). The Fourth Circuit is not alone in this restrictive interpretation of Calder. See, e.g., IMO Industries, Inc. v. Kiekert, AG, 155 F.3d 254 (3d Cir. 1998); Noonan v. Winston Co., 135 F.3d 85 (1st Cir. 1998); Far West Capital, Inc., v. Towne, 46 F.3d 1071 (10th Cir. 1995); Indianapolis Colts, Inc. v. Metropolitan Baltimore

Football Club Ltd. Partnership, 34 F.3d 410 (7th Cir. 1994); General Electric Capital Corp. v. Grossman, 991 F.2d 1376 (8th Cir. 1993); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir. 1988).

Just like in ESAB Group, Liberty Services has no contacts with Virginia other than its knowledge that its infringement in Florida might impact the franchise royalties of Liberty Tax, which happens to be based in Virginia. Liberty Tax also did not lose a single customer or franchise in Virginia due to Liberty Service's infringement. Liberty Services did not otherwise "purposefully avail itself of the privileges of conducting activities" in Virginia. Therefore, the Court hereby **FINDS** that this Court lacks specific personal jurisdiction over Liberty Services. Just as the Court reasoned in ESAB Group, for this Court to find otherwise would eviscerate the personal jurisdiction requirement and would always permit a plaintiff company to sue a defendant in the company's state of residence, regardless of how tenuous the defendant's connections to that state may be. Such a finding would violate the Due Process Clause.

Given that the Court lacks personal jurisdiction over Liberty Services, the Court must determine whether to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(2) or to transfer the case pursuant to 18 U.S.C. § 1406(a). Liberty Services concedes that venue would be proper and that the company would be subject to personal jurisdiction in the United States District Court for the Southern District of Florida. Furthermore, transfer of the case, rather than dismissal, would conserve the time and resources of both the parties and the courts by eliminating the need for new pleadings to be prepared and filed. Therefore, the Court hereby **FINDS** that transfer of the case to the United States District Court for the Southern District of Florida, a district in which the case could have originally been brought, is in the interest of justice pursuant to 18 U.S.C. § 1406(a).

### IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Liberty Services' motion to transfer and hereby **TRANSFERS** the case to the United States District Court for the Southern District of Florida.

The Clerk of the Court is **DIRECTED** to deliver a copy of this Order to all counsel of record. The Clerk of the Court is further **DIRECTED** to transfer this case to the United States District Court for the Southern District of Florida.

**IT IS SO ORDERED.**

/s/
Robert G. Doumar
UNITED STATES DISTRICT JUDGE

April 10, 2008
Norfolk, Virginia